


**U.S. Department of Justice**

*Michael J. Sullivan*
*United States Attorney*
*District of Massachusetts*

*Main Reception: (617) 748-3100*

United States Courthouse, Suite 9200
1 Courthouse Way
Boston, Massachusetts  02210

October 18, 2004

Ronald W. Zdrojeski, Esq.
LeBoeuf, Lamb, Greene & MacRae
225 Asylum Street, 13th Floor
Hartford, CT  06103

Thomas M. Russo, Esq.
Freehill, Hogan & Maher
80 Pine Street
New York, NY  10005

    Re: United States v. Bouchard Transportation Company, CR-04-10087-MBB.

Dear Counsel:

  This letter sets forth the agreement entered into between the United States Attorney for the District of Massachusetts (the "United States Attorney") and your client, Bouchard Transportation Company ("BTC" or the "Defendant"), in the above-captioned matter. The agreement is as follows:

  1.  <u>Guilty Plea</u>

  On or before October 21, 2004, or such date as the Court may determine, Defendant shall plead guilty to the Superseding Information to be filed in the District of Massachusetts in substantially the form attached, charging it with (i) one count of illegally discharging oil into the navigable waters of the United States in violation of the Clean Water Act, Title 33 U.S.C. §§ 1319(c)(1), 1321(b)(3) and (ii) one count of killing migratory birds in violation of the Migratory Bird Treaty Act, Title 16 U.S.C. §§ 703, 707. This agreement supersedes the written plea agreement between the parties dated March 10, 2004, which the parties hereby agree to be null and void.

  2.  <u>Penalties</u>

  Defendant understands and agrees that the statutory maximum penalties for the counts to which it is pleading guilty are as follows:

    A.    Clean Water Act
- two times the pecuniary loss caused by the offense pursuant to 18 U.S.C. §3571(d);
- five years probation;
- restitution; and
- $125 special assessment pursuant to 18 U.S.C. §3013(a)(1)(B)(iii).

    B.    Migratory Bird Treaty Act
- two times the pecuniary loss caused by the offense pursuant to 18 U.S.C. §3571(d);
- five years probation;
- restitution; and
- $50 special assessment pursuant to 18 U.S.C. §3013(a)(1)(B)(ii).

3.    <u>Sentencing Guidelines</u>

The United States Attorney and Defendant agree that the version of United States Sentencing Guidelines ("U.S.S.G.") incorporating guideline amendments through November 1, 2002 shall cover these offenses to the limited extent that the guidelines apply in this context. The United States Attorney and the Defendant further agree that pursuant to § 8C2.1 (commentary) and § 8C2.10 of the United States Sentencing Guidelines, which pertain to the sentencing of organizations, the Sentencing Guidelines do not determine the fine range in environmental cases, but rather leave such determination to the sound discretion of the Court in accordance with 18 U.S.C. §§ 3553, 3571 and 3572.

4.    <u>Corporate Authorization</u>

Within one week of the execution of this plea agreement, BTC will provide to the United States Attorney and to the Court written evidence, in the form of a notarized resolution of its Board of Directors, certifying that Defendant is authorized to waive its right to indictment, to plead guilty to the Superseding Information in this case, and to enter into and comply with all provisions of this agreement. The resolution shall further certify that an identified individual is authorized to take these actions and that all corporate formalities, including, but not limited to, approval by Defendant's directors, required for such authorization have been observed.

Defendant agrees that Ronald W. Zdrojeski or Thomas M. Russo, as attorneys for BTC, and pursuant to a duly authorized power of attorney for the Defendant, will be authorized to appear on its behalf, to enter its guilty plea and to represent it for imposition of its sentence.

2

5.  Agreed Disposition

A.  **Agreed upon Sentence**

The United States Attorney and Defendant agree, pursuant to Fed. R. Crim. P. 11(c)(1)(C), that the following is the appropriate disposition of this matter:

i.  $10,000,000 fine to be paid as specified below in paragraph 5.B;

ii. a three year term of probation, during which the Defendant must comply with the special conditions of probation set forth in paragraph 8 below; and

iii. a $175 special assessment.

B.  **Method of Payment**

Upon imposition of the sentence, the parties agree that $9 million of the fine and the special assessments, totaling $9,000,175, be payable forthwith. $1 million out of the total fine will be suspended, provided that if BTC fails, in a material manner, to implement the special conditions of probation set forth in section 8 below, the Court may order the defendant to pay the suspended portion of this fine.

Defendant agrees to convey the entire amount of the fines and special assessments due forthwith – $9,000,175 – by wire transfer to the Clerk of the United States District Court for the District of Massachusetts. Defendant agrees to make this payment within two business days following the imposition of the sentence.

No amount of the fine shall reduce the Defendant's civil liability to any person or entity, including any federal, state or local government agency. The parties agree that $2,000,000 of the fine shall be imposed for violation of the Oil Pollution Control Act of 1990, 33 U.S.C. §1321(b)(3), and by operation of law, specifically, 33 U.S.C. §1321(s), that amount shall be directed to the Oil Spill Liability Trust Fund. The parties further agree that $7,000,000 of the fine shall be imposed for violation of the Migratory Bird Treaty Act, 16 U.S.C. §§703, 707(a), and by operation of law, specifically, 16 U.S.C. §4406(b), that amount shall be directed to the Department of the Interior to carry out approved wetlands conservation projects.

6.  Conditions Precedent

The participation of the United States Attorney in the joint agreement set forth in paragraph 5 of this agreement is conditional upon Defendant's performance of the following obligations:

A.  Defendant shall provide full and truthful cooperation to the United States Attorney as set forth in paragraph 9 of this agreement;

B.  No later than two business days prior to sentencing, as scheduled by the Court, Defendant shall notify the United States Attorney that Defendant's counsel is in possession of $9,000,175 in its client funds account with which to pay Defendant's fine and mandatory special assessments as provided in paragraph 5;

C.  BTC shall comply with the remedial measures set forth in paragraph 8 of this agreement; and

If Defendant fails to comply with these conditions prior to sentencing, the United States Attorney shall be free to recommend any sentence, including fine, it deems appropriate.

7.  <u>Mandatory Special Assessment</u>

Defendant agrees to pay the mandatory special assessments, totaling $175, to the Clerk of the Court of the United States District Court for the District of Massachusetts within two business days after the date of sentencing.

8.  <u>Special Conditions of Probation – Remedial Measures</u>

As stated in the paragraph 5 above, the Defendant shall be placed on probation for a period of three years. During this period of time, the Defendant will be required to comply with the conditions of probation set forth below. These special conditions of probation are in addition to, and do not relieve the defendant of complying with, all existing applicable federal laws and regulations.

A.  **Operational Measures**

i.  *Buzzards Bay Pilotage Requirement:* BTC shall hire a pilot for all trips (north or south) in which a tugboat owned or operated by BTC is traveling with a barge (hereinafter "BTC tugboat/barge unit") into Buzzards Bay, as defined as the body of water between the Cape Cod Canal and the Buzzards Bay Entrance Light [41-23-47.5 North and 71-02-00.6 West] (hereinafter "Buzzards Bay Entrance Light").

a.  In the event a pilot can not board a north-bound tugboat/barge unit prior to the Buzzards Bay Entrance Light, the BTC tugboat/barge unit shall: (1) establish and maintain radio communications with a pilot; and (2) establish and maintain radar contact with a pilot prior to proceeding into Buzzards Bay, until a pilot can board the BTC tugboat at the New Bedford pilot station. If a BTC tugboat/barge unit is unable to comply with the conditions set forth in this

4

subparagraph, it shall notify the Captain of the Port Providence prior to entering Buzzards Bay, as defined above. The requirements set forth in this subparagraph shall not apply to: (1) double hull barges; or (2) empty barges carrying only "clingage." Nothing in this subparagraph shall alter the existing authority of a captain of a BTC tugboat to operate that vessel.

b. In the event that a south-bound BTC tugboat/barge unit can not allow a pilot to disembark after the Buzzards Bay Entrance Light, the BTC tugboat/barge unit shall allow the pilot to disembark at the New Bedford pilot station. Once the pilot has disembarked, the BTC tugboat/barge unit shall: (1) establish and maintain radio communications with a pilot; (2) establish and maintain radar contact with a pilot until it exits Buzzards Bay, as defined above. If a BTC tugboat/barge unit is unable to comply with the conditions set forth in this subparagraph, it shall notify the Captain of the Port Providence. The requirements set forth in this subparagraph shall not apply to: (1) double hull barges; or (2) empty barges carrying only "clingage." Nothing in this subparagraph shall alter the existing authority of a captain of a BTC tugboat to operate that vessel.

ii. *Maintenance of Radio Contact*: At all times when a tugboat/barge unit operated by BTC is underway, the individual in charge of the watch will be required to monitor radio communications, via the wheelhouse radio or through the use of a hand-held radio, consistent with applicable federal law and regulations;

iii. *Manning of Wheelhouse*: At all times when a tugboat/barge unit operated by BTC is underway, the individual in charge of the watch will not leave the wheelhouse without designating another crew member to be present in the wheelhouse;

iv. *Navigational Software Record Compliance*: BTC will operate all navigational software in a manner that ensures that a record is maintained for ten (10) days of the routes actually traveled by BTC tugboat/barge units. The requirements set forth in this subparagraph shall not apply to (1) double hull barges; or (2) empty barges carrying

only "clingage."

### B. *Compliance Program – Independent Consultant*

BTC agrees to establish and maintain an effective compliance program to ensure compliance with the aforementioned special conditions of probation and with the operational areas set forth below in subparagraph ii. The compliance program will include the following parameters:

i. BTC agrees that it will retain, at its own expense, the services of an independent consultant. This individual will be responsible for designing and administering this compliance program. The Defendant agrees to give the consultant full access to all BTC records, employees, facilities and vessels necessary to make a meaningful evaluation of the Defendant's current operations.

ii. BTC timely retained an independent consultant who was approved by the United States Attorney's Office, and BTC has submitted to the United States Attorney's Office and the United States Coast Guard, a copy of the contract between the consultant and the Defendant which details the scope of the audit. The audit addressed the following areas:

> (1) hiring of mates and captain, including the due diligence performed during the hiring process concerning an applicant's licensing and recency;
> (2) performance evaluations for mates and captains, including new hires;
> (3) the tug and barge watch-standing requirements, radio communications, recency requirements, look-out requirements, manning requirements, proper use of computerized navigational aids and paper charts, preparation of proper voyage plans, and the use of computerized alarm systems to detect deviations from plotted courses;
> (4) oil spill prevention, spill notification and spill response.

The scope of the audit was approved by the United States Attorney's Office and the United States Coast Guard and the Defendant adopted reasonable modifications to the scope of the audit proposed by the United States Attorney's Office and the United States Coast Guard.

iii. The consultant represented that he followed generally accepted environmental auditing techniques, procedures and policies in designing, implementing and

6

executing the audit, including the reporting of deficiencies and corrective measures;

iv. The consultant prepared a draft report of his findings and recommendations which was furnished to the Probation Department, the United States Attorney's Office and the United States Coast Guard at the same time it is given to the Defendant;

v. The consultant prepared a final report of his findings and recommendations which the Defendant furnished to the Probation Department, the United States Attorney's Office and the United States Coast Guard;

vi. The Defendant submitted a written response to the Probation Office, the United States Attorney's Office and the United States Coast Guard, specifying what actions the Defendant will take to correct any noted deficiencies and regulatory violations;

vii. The independent consultant will submit annual reports to the Probation Department, the United States Attorney's Office and the United States Coast Guard detailing the implementation of the compliance program. The responsibilities of the independent consultant shall terminate when the period of probation is completed or at an earlier time if the Court, upon motion of either party, determines that the independent consultant's services are no longer needed.

C.  **Corporate Compliance Officer**

BTC appointed a compliance officer for BTC, who is experienced in environmental regulations and compliance, and who will be responsible for all federal and state environmental regulatory compliance. BTC provided the Probation Department, the United States Attorney's Office and the United States Coast Guard with the name and *curriculum vitae* of the individual who has been designated as the corporate compliance officer.

D.  **The Natural Resource Damage Assessment**

BTC will cooperate fully with federal, state and local officials in the Natural Resource Damage Assessment process set forth in the Oil Pollution Control Act of 1990, 33 U.S.C. §2701, *et seq.* BTC will not withdraw its acknowledgment that it is the Responsible Party as it relates to the oil spill in Buzzards Bay involving BTC that occurred on April 27, 2003 (hereinafter the "Buzzards Bay Oil Spill"), for purposes of this Natural Resource Damage Assessment process.

9. <u>Cooperation with Law Enforcement</u>

Defendant agrees to cooperate truthfully and completely with the United States Attorney in its investigation of possible violations of federal and state law and in any trial or other proceedings arising out of the investigation of the Buzzards Bay Oil Spill.

A. Defendant understands and agrees that its cooperation obligations will require it to do the following:

   i. provide access to original documents and records;

   ii. require that, upon request and reasonable notice by the United States Attorney, Defendant's directors, officers and employees make themselves available for interviews by law enforcement agents and for attendance at legal and judicial proceedings, including grand jury sessions, trials and other court hearings; and

   iii. waive any claim of work product privilege with respect to the information disclosed to or obtained by Defendant's counsel through employee and non-employee witness interviews concerning any aspect of the Buzzards Bay Oil Spill.

B. Defendant further understands and agrees that its cooperation obligations will require it to do the following, within 14 days of the entry of its plea, with respect to work product prepared by BTC's counsel:

   i. provide all notes and memoranda of interviews compiled and prepared by its counsel of interviews of Defendant's employees as part of its internal investigation into the Buzzards Bay Oil Spill;

   ii. provide all notes and memoranda of interviews compiled and prepared by their counsel of interviews with individuals who are not directors, officers or employees of the Defendant as part of its internal investigation into the Buzzards Bay Oil Spill;

   iii. make available, upon request and reasonable notice by the United States Attorney, Defendant's counsel who conducted or participated in interviews of any individuals identified in subparagraphs 10(B)(i) and (B)(ii) above to provide information concerning the substance of any such interviews.

As limited to such materials, Defendant and its counsel will provide a complete and full waiver of the attorney-client privilege and the work-product privilege, except as

8

to those portions of materials containing the mental impressions and opinions of their counsel. Defendant agrees that only portions of materials containing the mental impressions and opinions of their counsel will be redacted from the materials described in this paragraph. The United States Attorney agrees that production of such materials will not be construed as a general waiver of the attorney-client privilege and/or work product privilege as to any communications or materials beyond those referred to in paragraphs 10(B)(i) and (ii) and (iii) above.

C. If Defendant complies with all the terms of this agreement, the United States Attorney will, upon request of Defendant, advise the Court and any federal, state or local government agency, including licensing agencies or authorities, of the nature and extent of any cooperation provided by Defendant.

10. <u>Criminal Liability</u>

Provided that the Defendant complies with the terms of this agreement, the United States Attorney agrees not to seek additional criminal prosecution against Defendant in connection with the Buzzards Bay Oil Spill.

11. <u>Probation Office Not Bound By Agreement</u>

The sentencing disposition agreed upon by the parties is not binding upon the United States Probation Office. Defendant's plea will be tendered pursuant to Fed. R. Crim. P. 11(c)(1)(C). Defendant cannot withdraw its plea of guilty unless the sentencing judge rejects the plea agreement. If the sentencing judge rejects the plea agreement, this agreement shall be null and void at the option of either the United States Attorney or the Defendant. In this regard the Defendant hereby waives any defense to any charges which it might otherwise have under any statute of limitations or the Speedy Trial Act.

12. <u>Information For Presentence Report</u>

Defendant represents that it has provided all information requested by the United States Probation Office concerning its assets, income and financial condition.

13. <u>Civil Liability</u>

By entering into this agreement, the United States Attorney does not compromise any civil liability, including but not limited to any tax liability or any liability under the Natural Resources Damage Assessment, which Defendant may have incurred or may incur as a result of its conduct and its plea of guilty to the charges specified in paragraph 1 of this agreement. BTC acknowledges and understands that its convictions pursuant to this plea agreement will trigger the debarment from government contracts and grants provisions of 33 U.S.C. §1368 and 40 C.F.R. Part 33.

9

14. <u>Restitution</u>

The Oil Pollution Control Act of 1990, 33 U.S.C. §2701, *et seq.*, sets forth a comprehensive process for assessing and restoring natural resource damages, as well as other forms of damages that result from oil spills. BTC acknowledges and concedes that it is the Responsible Party for purposes of the damage assessment conducted pursuant to this statute. The United States Attorney and the Defendant further recognize and acknowledge that the process for determining such damages is underway with respect to the Buzzards Bay Oil Spill. In light of the availability of that forum to determine the value of the loss to the victims of the Buzzards Bay Oil Spill, as well as the complexity of the loss valuation issues, the United States Attorney and the Defendant agree that the complication and prolongation of the sentencing process that would result from fashioning an appropriate restitution order outweigh the need to provide for restitution to the victims in the context of this criminal case. Defendant agrees that nothing in this paragraph shall be construed to eliminate or reduce Defendant's civil liability to any federal, state, local or private party. Defendant further agrees that nothing in this plea agreement shall be construed to eliminate or reduce Defendant's obligations arising out of the requirements for damage restorations or claims contained in the Oil Pollution Act of 1990, 33 U.S.C. §2701, *et seq.* in connection with the Buzzards Bay Oil Spill. Defendant further agrees that nothing in this paragraph shall be construed to eliminate or reduce its liability or obligation for the restoration, rehabilitation or replacement of the natural resources damaged, destroyed or injured as a result of the Buzzards Bay Oil Spill.

15. <u>Withdrawal of Plea Agreement</u>

Should Defendant's superseding guilty plea not be accepted by the Court for whatever reason, or later be withdrawn on motion of Defendant, this superseding plea agreement shall be null and void at the option of the United States Attorney.

16. <u>Breach of Agreement</u>

If the United States Attorney determines that Defendant has failed materially to comply with any provision of this agreement, or has committed any crime during the pendency of this agreement, the United States Attorney may, at his sole option, be released from his commitments under this agreement in their entirety by notifying Defendant, through counsel or otherwise, in writing. The United States Attorney may also pursue all remedies available to him under the law, irrespective of whether he elects to be released from his commitments under this agreement. Defendant recognizes that no such breach by it of any obligation under this agreement shall give rise to grounds for withdrawal of its guilty plea. Defendant understands that should any such breach of this agreement occur, the United States Attorney will have the right to use against Defendant before any grand jury, at any trial, hearing or for sentencing purposes, any statements made by its employees and agents, and any information, materials, documents or objects provided by Defendant to the United States Attorney pursuant to this agreement without any limitation. In this regard, Defendant hereby waives any defense to any charges which it might otherwise have under any statute of limitations or the Speedy Trial Act.

17.  **Who Is Bound By Agreement**

This agreement is limited to the United States Attorney for the District of Massachusetts and cannot and does not bind the Attorney General of the United States or any other federal, state or local prosecutive authorities.

18.  **Complete Agreement**

This agreement is the complete and only agreement between the parties. No promises, agreements or conditions have been entered into other than those set forth in this letter. This agreement supersedes prior understandings, whether written or oral, including the agreement between the parties dated March 10, 2004, which the parties hereby agree is null and void. This agreement cannot be modified other than in a written memorandum signed by the parties or on the record in court.

If this letter accurately reflects the agreement entered into between the United States Attorney and Defendant, please sign the Acknowledgment of Plea Agreement below, and affix Defendant's corporate seal. Please also have the signatures of the corporate signatories notarized. In addition, please provide a copy of requisite authorization to enter into this agreement, by Defendant's directors (the original to be provided to the Court). Return the original of this letter to Assistant United States Attorney Jonathan F. Mitchell.

Sincerely,

MICHAEL J. SULLIVAN
United States Attorney

By: _____
JAMES B. FARMER
Assistant U.S. Attorney
Chief, Criminal Division

STEPHEN P. HEYMANN
Assistant U.S. Attorney
Deputy Chief, Criminal Division

JONATHAN F. MITCHELL
NADINE PELLEGRINI
Assistant U.S. Attorneys

PETER KENYON
Senior Criminal Enforcement Counsel
Environmental Protection Agency

ACKNOWLEDGMENT OF PLEA AGREEMENT
Bouchard Transportation Company

I have read this letter of agreement in its entirety, and have discussed it with the directors of Bouchard Transportation Company and with its attorneys. I hereby represent that I am an officer of Defendant corporation and that I am duly authorized to enter into this agreement. I hereby acknowledge that this letter of agreement fully sets forth the agreement of Bouchard Transportation Company with the United States Attorney for the District of Massachusetts. I further state that there have been no additional promises or representations made to or for the benefit of Bouchard Transportation Company by any officials of the United States Attorney in connection with this matter.

*[signature]*
For Defendant
Bouchard Transportation Company

Date:

Corporate Seal:

Notary Acknowledgment and Seal:

VICTOR PAUL CORSO
Notary Public, State of New York
No. 02CO4984194
Qualified in Suffolk County
Certificate Filed in New York County
Commission Expires July 18, [year]

I certify that this plea agreement letter has been reviewed by a duly authorized official of Bouchard Transportation Corporation and that he/she understands its terms.

*[signature]*
Date: October 20, 2004
Ronald W. Zdrojeski, Esq.
Attorney for Bouchard Transportation Corporation

*[signature]*
Date: Oct 21, 2004
Thomas M. Russo
Attorney for Bouchard Transportation Corporation

12