

**U.S. Department of Justice**

*Michael J. Sullivan*
*United States Attorney*
*District of Massachusetts*

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

February 17, 2006

By Fax: (212) 425-1901 and First Class Mail
Thomas M. Russo, Esq.
Freehill, Hogan & Maher
80 Pine Street
New York, New York 10005

Re:    United States v. Bouchard Transportation Company, Inc.,
04-CR-10087-MBB

Dear Mr. Russo:

I write to express the government's concern over the findings contained in the "First Annual Report" (the "Report"), prepared by Captain George Ireland in connection with the above-referenced matter. As you will recall, the report is the first in a series of annual reports detailing Bouchard Transportation Company's implementation of the compliance program required under paragraph 8.B of the plea agreement. The compliance program and the annual reports, together with specific operational measures identified in paragraph 8.A of the plea agreement, were imposed by the court as conditions of probation at sentencing on November 18, 2004. Based on the government's reading of the Report, Bouchard appears to have implemented many of the required specific operational measures, but its implementation of the compliance program seems to have stalled and indeed to have slipped backward in certain keys areas.

The Report is essentially an update of Captain Ireland's initial audit report, dated September 3, 2004. As such, the Report focuses on three principal areas: 1) the status of new measures initiated at the time of the initial audit, 2) the implementation of recommendations made in the initial audit, and 3) compliance with the specific operational measures set out in the plea agreement. The Report notes deficiencies in each of these area, which I address below.

Thomas Russo, Esq.
February 17, 2006
Page 2

1)    Status of new measures initiated by the former COO at time of initial audit

The report describes significant managerial changes since the initial audit, much of it occurring during the Summer of 2005. Some of the most experienced people in the company have resigned, including Stanley Chelluck, the former Chief Operating Officer responsible for initiating many of the improvements described in the initial audit. Some positions have changed, others remain vacant, and still others are occupied by less experienced individuals. As noted by Captain Ireland, "Administrative processes slowed considerably during this period of management change." Indeed, the list of observations made by Captain Ireland and set out on page 15 of the report reveals that the company is failing to implement processes described in the initial audit only a year ago. Many of these administrative processes have a direct bearing on safety and environmental compliance.

This is especially discouraging because there is some evidence that the changes put in place by Chelluck were working. For instance, Captain Ireland reports that injuries, oil spills, and damages have declined since the Buzzards Bay spill, and he attributes these achievements, at least in part, to the systems put in place by Chelluck. The government fears that the organizational and administrative problems brought about by management instability will jeopardize these gains. The recent instances of complacency by barge captains – one of which resulted in an oil spill of an undetermined amount – suggest that this may already be happening.

2)    Implementation of recommendations made in the initial audit report

The recommendations made in the initial audit appear to have been implemented in varying degree. While minor discrepancies are to be expected, the government is troubled by the company's performance in the following areas:

a)    Performance evaluations and hiring

The initial audit described a process whereby newly hired or promoted persons were to be placed on probation for ninety days. During that period, performance evaluations would be conducted at thirty, sixty and ninety days. The initial audit urged more formal documentation of this process, specifically recommending that the company I) enforce probation period reporting by its Captains and ii) provide a mechanism to notify personnel when the probation period has ended. In a letter dated September 21, 2004, the company accepted both recommendations. Now, a year later, Captain Ireland reports that the company has eliminated the probation period program altogether.

Unfortunately, the elimination of the probation period program is consistent with the company's decision to reduce the frequency of performance evaluations for all vessel personnel. Captain Ireland reports that the semi-annual evaluations described in the initial audit have been

Thomas Russo, Esq.
February 17, 2006
Page 3

replaced by annual audits, less than half of which had been conducted for Mates at the time of
Captain Ireland's last visit.

Hiring also continues to a concern because the company continues to have an insufficient
number of Mates and Captains to properly man its vessels. At the time of the initial audit, the
company was short three Mates; in the recent report, the company is short two Captains and one
Mate. These deficiencies continue to be addressed by having Captains and Mates "work over."
More ominous is the fact that the company will be required to provide six additional Captains
and six additional Mates during the next year (more if a second Mate is added to certain short
haul towing vessels). The government shares Captain Ireland's concern that the tight market for
experienced personnel may "tempt the company to hire marginal people to keep towing vessels
working rather than tying them up for lack of qualified crew." (p. 28.)

It bears emphasizing that Bouchard's responsibility for the Buzzards Bay spill stemmed
in part from its failure to recognize and respond to repeated concerns and warning signs about the
competence of the mate aboard the *Evening Tide*. For this reason, it is imperative that the
standards and practices by which Bouchard hires, trains, and promotes mates be beyond
reproach. The government and Captain Ireland invested a great deal of time during the initial
audit process to verify that the company had improved its hiring, evaluation, and supervision of
vessel personnel. The recent findings cause us to question the company's commitment to these
improvements.

      b)    Manning

The initial audit described shortages in AB-qualified deck crew for both towing vessels
and tank barges. That report concluded that Bouchard "has operated many tugs and barges
without the required number of crew aboard having qualification as AB. This is a violation of
law and regulation." (p. 49.) Captain Ireland's recommendations in this regard were particularly
pointed: "Man towing vessels and tank barges with proper number of persons qualified as AB.
This is a regulatory requirement." In its letter dated September 10, 2004, Bouchard responded
that it was fully implementing this recommendation.

The government questions whether Bouchard is complying with the regulatory
requirements for AB qualification of deck crews on towing vessels and tank barges. For
example, the report states that only 40% of Bouchard Captains and Mates on tank barges are
qualified as AB. (p. 31.) In fairness, unlike the initial report, this report does not indicate
whether Bouchard has actually operated vessels in violation of the regulatory requirements.
Clarification is needed in this area.

Thomas Russo, Esq.
February 17, 2006
Page 4

       c)      Oil spill prevention, notification and response

      It is discouraging to learn that Preparedness for Response Exercise Program (PREP) records are still not up to date and that Bouchard is not in full compliance with PREP guidelines. (p. 32.) Once again, the PREP program was the subject of a specific recommendation in the initial audit and Bouchard claimed to have taken actions to implement that recommendation more than a year ago.

       3)      <u>Compliance with the specific operational measures set out in the plea agreement</u>

      As documented by Captain Ireland, Bouchard appears to be in compliance with the operational measures in the plea agreement governing Buzzards Bay pilotage, maintenance of radio contact, and manning of the wheelhouse. However, there appears to be a misunderstanding regarding the scope of the measure governing navigational software record compliance. The plea agreement reads, "BTC will operate all navigational software in a manner that ensures that a record is maintained for ten (10) days of the routes actually traveled by BTC tugboat/barge units. The requirements set forth in this subparagraph shall not apply to (1) double hull barges; or (2) empty barges carrying only 'clingage.'" Nowhere is the scope of this requirement limited to vessels in Buzzards Bay. Yet, Captain Ireland's report states that the relevant Bouchard Navigation Advisory requires that vessel track histories be maintained only for transits through Buzzards Bay. This issue should be clarified and Bouchard should keep track histories for all vessels for ten days.

Thomas Russo, Esq.
February 17, 2006
Page 5

## Conclusion

The government recognizes that after the Buzzards Bay spill in April 2003, Bouchard
developed and began to implement a compliance program that would improve overall vessel
operations and reduce the likelihood of another major spill. Although many aspects of that
compliance program remain in place and are being appropriately implemented, the overall trend
is not encouraging. So that the government can be assured that Bouchard is committed to full
implementation of the reforms the parties agreed upon as part of the initial audit, it is incumbent
upon Bouchard to address the deficiencies highlighted above. Accordingly, please explain, for
each of these deficiencies, what specific steps is Bouchard undertaking to address the deficiency
and when will the remedial measures be completely implemented. As a further means of
ensuring compliance, please let us know whether Bouchard would be willing to submit to an
interim audit (that is, an audit half-way through the annual audit period), that would evaluate
Bouchard's progress in these areas.

Very truly yours,

MICHAEL J. SULLIVAN
United States Attorney

By:

JONATHAN F. MITCHELL
Assistant U.S. Attorney

Cc:    Clerk of Court, U.S. District Court (D. Mass.)
       Peter W. Kenyon, Esq.
       Captain Fred Kenney, USCG
       Ronald J. Zdrojeski, Esq.
       Anie Dotzler, U.S. Probation Office
       Captain George Ireland