

U.S. Department of Justice

F I L E D
E R K S  O F F I C E
*Michael J. Sullivan*
*United States Attorney* 8
*District of Massachusetts*

U.S. DISTRICT COURT
DISTRICT OF MASS

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

May 4, 2006

By Fax: (212) 425-1901 and First Class Mail
Thomas M. Russo, Esq.
Freehill, Hogan & Maher
80 Pine Street
New York, New York 10005

> Re:    United States v. Bouchard Transportation Company, Inc.,
>        04-CR-10087-MBB

Dear Mr. Russo:

The government has read and considered your March 23, 2006 letter, in which you responded to the concerns raised by Captain George Ireland in the First Annual Report in the above-referenced matter. My letter of February 17, 2006 highlighted those deficiencies and requested that BTC describe the remedial measures and implementation dates for each deficiency. My letter also requested that your client submit to an interim audit that focuses on these deficiencies. For the reasons set forth below, the government believes that your letter fails to address fully the auditor's and the government's concerns.

1) Status of new measures initiated by the former COO at the time of the initial report

In the First Annual Audit, Captain Ireland concluded that the administrative processes put in place by former Chief Operating Officer Stanley Chelluck had slowed considerably. He attributed at least some of this slowdown to management change. Some positions had changed, some positions remained vacant, and some were filled by inexperienced individuals. He was specific both in his observations and his recommendations. In my February letter, I reiterated Captain Ireland's concerns and emphasized that organizational and administrative problems caused by management instability could jeopardize the gains made since the April 27, 2003 spill.

In focusing almost exclusively on the replacement of John Lindahl with John DeRose, III as COO, your response to my letter misses the point. Although Mr. DeRose may well be better qualified than Mr. Lindahl, the real issues are management stability and the status of the

Thomas Russo, Esq.
May 5, 2006
Page 2

improvements initiated by Mr. Chelluck. Your letter fails to address those issues in any detail. Six months after the First Annual Report, we have yet to learn whether Bouchard has accepted and implemented Captain Ireland's recommendations.

2) Implementation of recommendations in the initial report

(a) Performance evaluations and hiring

We are pleased to learn that the probationary period for new employees has not been eliminated and that semi-annual evaluations for all employees have resumed. We also understand the there has been some effort to formalize and document these processes. What is absent from your letter, however, is any discussion of actual implementation. For example, you state, "At the time of Captain Ireland's audit, there were files of new hired crewmembers that did not possess a complete set of 30-60-90 day evaluations." But your letter fails to say whether this situation has been corrected. Similarly, Captain Ireland found that fewer than half of BTC's mates had received annual evaluations at the time of his visit. Your letter states that semi-annual evaluations have resumed, but it is silent on the issue of whether, in fact, all employees have been evaluated on schedule.

Notwithstanding your assurances that hiring and training qualified people is the company's main priority, the hiring picture also remains troubling. At the time of the initial report, the company was short three mates; in the First Annual Audit, the company was short two captains and one mate; and now, according to your letter, the company is short five mates. To the extent that BTC plans to address the current shortfall by promoting some of the six mates in the training program, the information gathered by Captain Ireland suggests that the training program is already operating below the desired number of ten training mates.

Given the significance mate training and qualifications in connection with the April 2003 spill, these developments appear ominous. They suggest that BTC may be unable to hire, train, and retain a full complement of captains and mates. As Captain Ireland pointed out, this situation could tempt the company to hire marginal people to keep towing vessels working. Given the significance of this issue, the company's statement that it "plans to hire and train qualified additional personnel for contemplated new buildings" seems dismissive. From the government's perspective, this is a ticking time bomb that the company has yet to diffuse.

(b) Manning

In my February letter, the government asked for clarification on the issue of BTC's compliance with able-bodied seaman qualification requirements for tug and barge crews. You will recall that in the initial report Captain Ireland found that BTC had operated "many tugs and barges without the required number of crew aboard having qualification as AB." The

Thomas Russo, Esq.
May 5, 2006
Page 3

percentages cited by Captain Ireland in the First Annual Report suggested that BTC might still be violating AB qualification requirements. Your response that the company is complying with regulatory requirements fails to answer the question and lacks sufficient detail. Did the company operate vessels in violation of applicable AB qualification requirements? If so, how many and when? Furthermore, what is the status of AB qualification today? What are the raw numbers and percentages of tug and barge crews that are AB qualified? Here again, we are confronted with the same vexing issue, whether all the personnel sailing Bouchard's vessels qualified to do so.

(c) Oil spill prevention, notification and response

With regard to Spill Management Team (SMT) exercises, your letter indicates that BTC is using its response to the B-195 spill at Sunoco-Girard Point as its SMT exercise for 2005. Captain Ireland addressed this issue prospectively in the First Annual Report as follows:

> Response to an actual spill will satisfy this standard if the company response is evaluated. Evaluation, in my opinion, would include documenting the response, generating 'lessons learned', making that information available to SMT members, and amending the Vessel Response Plan with experienced gained.

It is not clear from your letter whether the required evaluation of the B-195 spill took place. Although you assert that all required objectives within the PREP guidelines were met and documented within the Incident Summary Report, we see no evaluation of the response whatsoever in Exhibit 6. If such an evaluation was documented, the government would like to see it.

In conclusion, BTC's responses do not mollify all of the government's concerns. Equally worrisome is that some of the problems identified in the 2004 Initial Report remain unresolved. This is not nitpicking. BTC's failures in the areas identified in this letter set the stage for events like those of April 27, 2003. To avoid such an outcome, BTC must fully assess, confront, and resolve these lingering issues promptly. Toward that end, the government asks that BTC allow Captain Ireland to prepare an interim audit now that focuses specifically on the extent to which BTC has taken specific steps to implement the recommendations identified in the First Annual Report. The report generated based on this interim audit report will provide the parties with a baseline from which to evaluate the findings of the Second Annual Report in November. Captain Ireland has informed the government that he is available to begin work on interim audit.

Thomas Russo, Esq.
May 5, 2006
Page 4

So that the government may know how to proceed from here, please inform me by the close of business May 12, 2006, whether BTC will agree to allow the audit to take place.

Very truly yours,

MICHAEL J. SULLIVAN
United States Attorney

By:

JONATHAN F. MITCHELL
Assistant U.S. Attorney

Cc:     Clerk of Court, U.S. District Court (D. Mass.)
        Peter W. Kenyon, Esq.
        Captain Fred Kenney, USCG
        Julius Britto, U.S. Probation Office
        Captain George Ireland