GEORGE B. FREEHILL
WILLIAM L. JUSKA, JR.
JAMES L. ROSS*
ERIC E. LENCK
JOHN J. WALSH*
PATRICK J. BONNER*
PETER J. GUTOWSKI
MARK F. MULLER
WAYNE D. MEEHAN*
DON P. MURNANE, JR.▵
THOMAS M. RUSSO
THOMAS M. CANEVARI †
MICHAEL FERNANDEZ*
JOHN F. KARPOUSIS*▵
MICHAEL E. UNGER*†
WILLIAM J. PALLAS*
GINA M. VENEZIA*▵
BARBARA G. CARNEVALE*
DOLORES N. O'LEARY*
LAWRENCE J. KAHN*
JUSTIN T. NASTRO*
PAMELA L. SCHULTZ**
DANIEL J. FITZGERALD*†▵
JILL A. TAFT
KERRY A. DINNEEN◊

*ALSO ADMITTED IN NEW JERSEY
†ALSO ADMITTED IN CONNECTICUT
▵ALSO ADMITTED IN WASHINGTON, D.C.
*ALSO ADMITTED IN LOUISIANA
◊ALSO ADMITTED IN MASSACHUSETTS

LAW OFFICES OF
FREEHILL HOGAN & MAHAR LLP
80 PINE STREET
NEW YORK, N.Y. 10005-1759

TELEPHONE (212) 425-1900
FACSIMILE (212) 425-1901
E-MAIL: reception@freehill.com
www.freehill.com

NEW JERSEY OFFICE
850 BERGEN AVENUE
JERSEY CITY, N.J. 07306
TELEPHONE: (973) 623-5514
FACSIMILE: (973) 623-3813

CONNECTICUT OFFICE
23 OLD KINGS HIGHWAY SOUTH
DARIEN, CT 06820-4538
TELEPHONE: (203) 921-1913
FACSIMILE: (203) 358-8377

May 12, 2006

Our Ref: 107-06/TMR/JJW

**Via Federal Express and Facsimile: 617-748-3960**
Jonathan Mitchell, Esq.
Assistant United States Attorney
U.S. Department of Justice
District of Massachusetts
John Joseph Moakley United States Courthouse
1 Courthouse Way
Boston, Massachusetts 02210
(Tel. No: 617 748-3100)

Re:  U. S. v. Bouchard Transportation Company, Inc.
O4-CR-10087-MBB

Dear Mr. Mitchell:

Thank you for your letter of May 4, 2006 requesting more details regarding Bouchard Transportation Company, Inc.'s (hereinafter "BTC") adoption of Captain Ireland's suggestions, and asking that BTC allow Captain Ireland to prepare an interim audit focusing on BTC's implementation of his recommendations in his First Annual Report. To answer your questions and allay your concerns, BTC submits the following:

1. *Status of New Measures Initiated by the Former COO at the Time of the Initial Report*

BTC recognizes Captain Ireland's concerns regarding management changes and how they could affect the administrative processes put into place by former Chief Operating Officer Stanley Chelluck. However, BTC believes that by examining available

NYDOCS1/260874.2

talent, and functional responsibilities, we have created more stability and more continuity in those administrative processes.

After a mere two weeks with BTC, John DeRose took a position with another company. BTC believes he had been seeking another position during the time that he was negotiating with BTC for employment. Given the difficulty of finding suitably experienced candidates for the Chief Operating Officer's position, BTC has divided the responsibilities as follows: Robert Bouchard is Vice President in charge of maintenance and repair and new construction, Lawrence Lopez is Vice President in charge of risk management and safety compliance, and John Lindahl is Manager of vetting and safety. Robert Bouchard has over thirty years of experience in the Tug and Barge industry. He has supervised the construction and maintenance of the fleet for about fifteen years. His knowledge of the class requirements, operational characteristics and machinery aboard is unequalled. Lawrence Lopez is a graduate of the U.S. Merchant Marine Academy at Kings Point, and New York Law School. He is an experienced admiralty attorney, and has over ten years experience in the marine industry ashore and at sea. John Lindahl is a graduate of the U.S. Coast Guard Academy, a former Coast Guard Officer with MSO New York, and has served BTC in a variety of capacities for over three years. Please note that John Johnson, the former Coast Guard Captain of the port of Buffalo, will be assisting John Lindahl on safety issues.

Lance Saveria has also departed. His responsibilities were taken over by Eric Mark. Erick Mark is a graduate of Massachusetts Maritime Academy. He has served as an engineering officer in the tug and barge industry. In addition, he has over 8 years of experience as a surveyor for Det Norske Veritas, the Norwegian Classification Society.

2. *Tracking Captain Ireland's Recommendations in His First Annual Report*

BTC has accepted almost all of them and implemented the ones accepted:

1. "Fully implement requirement for new hire's recency to be submitted for review and copy to be retained by company."

**Comment:** BTC has accepted this recommendation and, when available, recency records have been submitted and verified by a captain.

2. "Provide means to ensure that Mates, new to the company, earn a completed New Mate Evaluation Checklist and a Proficiency Report before being assigned to fill a position."

**Comment:** BTC has accepted this recommendation and carries training Mates as an extra Mate on boats, until the Evaluation Checklist and Proficiency Report has been completed by the Captain.

3. "Implement a system for routine monitoring of Mate and Captain Personnel Evaluations."

**Comment:** BTC has accepted this recommendation and Capt. Bob Glas and Capt. Bill Serba routinely board tug boats to monitor the evaluations.

4. "Facilitate additional Captains to become Designated Examiners by the Coast Guard. This will authorize these persons to assist qualifying Training Mates for license applications."

**Comment:** BTC has accepted this recommendation and is qualifying Captains as Designated Examiners. BTC has now doubled the number of examiners from 2 to 4 and is considering incentives for more captains to become qualified.

5. "Standardize waypoints so plotters and paper charts are the same."

**Comment:** BTC has difficulty implementing this recommendation due to the nature of the routes taken by the tugs and barges. The waypoints are created by the Captains and often change with the voyage, but the paper charts will continue to be the same. It is therefore impractical and unsafe to try to create a uniform plotter/paper chart rule.

6. "Continue effort to increase number of ABs in fleet."

**Comment:** BTC has accepted this recommendation and is paying for OSs to attend classes for credit towards an AB Document, and has offered financial incentives, including bonuses and significant raises for crew who raise their license to AB.

7. "Bring PREP (National Preparedness for Response Program) training and records up to date."

**Comment:** BTC has accepted this recommendation and has documented its last triennial cycle, beginning in 2004. During 2004, a comprehensive tabletop exercise was conducted. In 2005, the B No. 195 spill satisfied the requirement for a fully documented exercise. Finally, in 2006, a Maximum Most Probable Discharge Drill is planned. The drill is presently scheduled for June 2006 and advance meetings with the OSRO have already taken place.

The required evaluation of the B No. 195 spill did take place. We have provided the document which contains the evaluation. We understand that you wanted to see the "Lessons Learned" and we will provide that document.

8. "Conduct qualified individual and Oil Spill Response Emergency Exercises as separate exercises."

**Comment:** BTC meets the requirement of performing both drills but we dispute the necessity of separating them. The requirement is to conduct Qualified Individual Notification Exercises & Oil Spill Response Exercises. Section 3-3 of the PREP Guidelines states: "The plan holder should take credit for this exercise [a Qualified Individual Notification Exercise] when conducted in conjunction with other exercises, as long as all objectives are met, the exercise is evaluated, and a proper record is generated." The BTC Emergency Drill Program achieves a realistic oil spill scenario and in so doing permissively incorporates both drills. In a real emergency the functions and processes of both drills are necessary to achieve a responsible and well organized response, drilling these processes together better prepares personnel for actual emergencies.

9. "Continue installation of closed gauging devices onboard black oil tank barges."

**Comment:** BTC has accepted this recommendation and all black oil tank barges now have high level alarm systems.

The foregoing is proof that the management system continues to implement the administrative processes initiated by Stan Chelluck.

10. "Performance evaluations and hiring."

**Comment:** The 30-60-90 day evaluations have all been completed. Similarly, with a few exceptions, all BTC mates have received annual evaluations.

The mate situation is an industry problem that all tug fleets are encountering. BTC continues to search for potential mates for their training program and will not operate a tug without a qualified mate.

11. "Manning."

**Comment:** This is an extremely complicated situation where the rules are not clear. Captain Ireland based his concern on the manning of the tugs and barges with able-bodied seamen in terms of percentages that may be misleading. Many of the tugs operate on inland rivers, lakes, bays and sounds and do not require able-bodied seamen. Consequently, Captain Ireland's concern that 52% of the deckhands on tugs having AB Documents may not be sufficient could be

statistically misplaced, as it is not clear that 50% of Bouchard's deckhands need to have AB Documents.

Moreover, Coast Guard rules only require two deckhands for any tug with a rating of less than 200 gross registered tons on any voyage regardless of length. If only two deckhands are required, only one of the deckhands needs to have an AB Document. This further lowers the percentage of deckhands which are required to have AB Documents.

Captain Ireland also pointed to a statistic that only 40% of the tankermen in the fleet had an AB endorsement on their tankerman document. However, the Barges are permissively manned. The law requires that the barges carry the complement of crew in accordance with the Certificate of Inspection ("COI") issued by the Officer in Charge of Marine Inspection ("OCMI"), U.S. Coast Guard. The COI's permit the barges to travel coastwise routes (within 20 miles of the shoreline) and require an AB for those routes, if the route is less than 600 nautical miles and 2 AB's if the route is greater than 600 miles. However, many of the BTC barges perform river trips only without going coastwise. Therefore, the coastwise AB requirements are not in effect and the barges can carry two OS Tankermen. This significantly lowers the percentage of AB Tankermen that the fleet must have.

Moreover, the manning rules for barges, being permissive, only apply when the barges are actually manned. There is an ambiguity that arises when the barge crew is assigned to the tug and only boards the barge for loading and discharging. Under those circumstances, it is arguable that the AB Deckhand on the tug can satisfy the AB requirement for both the tug and barge. This would reduce the AB requirement for both the tug and barge, in some instances, from three to one. BTC is seeking clarification of this ambiguity from OCMI.

You have asked if the company has operated vessels in violation of applicable AB qualification requirements. The company does not believe there have been any manning violations. However, it is difficult to determine if there has been any noncompliance due to the ambiguities mentioned above. The company is attempting to establish an internal standard which will achieve compliance without operational personnel having to wade through the complications of manning requirements. The company is focusing its efforts in two ways. One is to establish an unequivocal determination of requirements, and two, is to redouble efforts in increasing AB population through incentives. If noncompliance situations are found, they will be immediately corrected.

The company has reached out to other members of the tug and barge industry to determine how they manage the shortages in manning and ambiguous regulation. These informal talks only highlighted the fact that these challenges face all operators.

## CONCLUSION

BTC welcomes a limited interim audit by Captain Ireland to address concerns that you have raised. As you know, the auditing process can be extremely disruptive to normal operations and considering that Captain Ireland will soon commence his annual audit that is due in November of 2006, we request that the interim audit have a time limitation and a reasonably narrow scope. Specifically, in accordance with your letter of May 4, this interim audit is limited to verifying the specific steps taken by BTC to implement recommendations identified in the First Annual Report, which we have outlined above. Any further issues can be addressed in Captain Ireland's annual report. We hope that this interim audit could be limited to less than one week.

We look forward to your response.

Very truly yours,

FREEHILL, HOGAN & MAHAR, LLP

Thomas M. Russo

TMR:mg
Enclosure

cc: **VIA ECF**
Magistrate Judge Bowler
United States Magistrate Judge
United States District Court
District of Massachusetts
1 Courthouse Way
Boston, Massachusetts 02210

bcc:   Bouchard Transportation Co., Inc. - Attn:  Mr. Morton S. Bouchard, III
***FACSIMILE NUMBER:*** (631) 390-4905

NYDOCS1/260874.2                                   7

FREEHILL HOGAN & MAHAR LLP

```
* * * COMMUNICATION RESULT REPORT ( MAY. 12. 2006  4:06PM ) * * *

                                                    FAX HEADER 1:  FREEHILL HOGAN MAHAR
                                                    FAX HEADER 2:

TRANSMITTED/STORED : MAY. 12. 2006  4:04PM
FILE  MODE              OPTION            ADDRESS                    RESULT         PAGE
-----------------------------------------------------------------------------------------
0174  MEMORY TX                           G3   :   6177483960        OK             6/6
-----------------------------------------------------------------------------------------
        REASON FOR ERROR
        E-1) HANG UP OR LINE FAIL                  E-2) BUSY
        E-3) NO ANSWER                             E-4) NO FACSIMILE CONNECTION
        E-5) MAIL SIZE OVER
```

LAW OFFICES OF
## FREEHILL HOGAN & MAHAR LLP
80 PINE STREET
NEW YORK, N.Y. 10005-1759

TELEPHONE (212) 425-1900
FACSIMILE (212) 425-1901
E-MAIL: reception@freehill.com
www.freehill.com

GEORGE B. FREEHILL
WILLIAM L. JUSKA, JR.
JAMES L. ROSS*
ERIC E. LENCK
JOHN J. WALSH*
PATRICK J. BONNER*
PETER J. GUTOWSKI
MARK F. MULLER
WAYNE D. MEEHAN*
DON P. MURNANE, JR.♦
THOMAS M. RUSSO
THOMAS M. CANEVARI †
MICHAEL FERNANDEZ*
JOHN F. KARPOUSIS*▲
MICHAEL E. UNGER*†
WILLIAM J. PALLAS*
GINA M. VENEZIA*▲
BARBARA G. CARNEVALE*
DOLORES N. O'LEARY*
LAWRENCE J. KAHN*
JUSTIN T. NASTRO*
PAMELA L. SCHULTZ**
DANIEL J. FITZGERALD*▲
JILL A. TAFT
KERRY A. DINNEEN°

*ALSO ADMITTED IN NEW JERSEY
†ALSO ADMITTED IN CONNECTICUT
▲ALSO ADMITTED IN WASHINGTON, D.C.
♦ALSO ADMITTED IN LOUISIANA
°ALSO ADMITTED IN MASSACHUSETTS

NEW JERSEY OFFICE
650 BERGEN AVENUE
JERSEY CITY, N.J. 07306
TELEPHONE: (973) 623-5514
FACSIMILE: (973) 623-3813

CONNECTICUT OFFICE
23 OLD KINGS HIGHWAY SOUTH
DARIEN, CT 06820-4538
TELEPHONE: (203) 921-1913
FACSIMILE: (203) 358-8377

May 12, 2006

Our Ref: 107-06/TMR/JJW

<u>Via Federal Express and Facsimile: 617-748-3960</u>
Jonathan Mitchell, Esq.
Assistant United States Attorney
U.S. Department of Justice
District of Massachusetts
John Joseph Moakley United States Courthouse
1 Courthouse Way
Boston, Massachusetts 02210
(Tel. No: 617 748-3100)

      Re:   U. S. v. Bouchard Transportation Company, Inc.
            04-CR-10087-MBB

Dear Mr. Mitchell:

    Thank you for your letter of May 4, 2006 requesting more details regarding Bouchard Transportation Company, Inc.'s (hereinafter "BTC") adoption of Captain Ireland's suggestions, and asking that BTC allow Captain Ireland to prepare an interim audit focusing on BTC's implementation of his recommendations in his First Annual Report. To answer your questions and allay your concerns, BTC submits the following:

    1.   ***Status of New Measures Initiated by the Former COO at the Time of the Initial Report***

    BTC recognizes Captain Ireland's concerns regarding management changes and how they could affect the administrative processes put into place by former Chief Operating Officer Stanley Chelluck. However, BTC believes that by examining available

NYDOCS1/260874.2

```
* * *  COMMUNICATION RESULT REPORT ( MAY. 12. 2006  4:08PM )  * * *

                                                     FAX HEADER 1:  FREEHILL HOGAN MAHAR
                                                     FAX HEADER 2:

TRANSMITTED/STORED : MAY. 12. 2006  4:05PM
FILE   MODE              OPTION          ADDRESS                          RESULT         PAGE
-------------------------------------------------------------------------------------------
0175  MEMORY TX                          G3  :  16313904905               OK             7/7
-------------------------------------------------------------------------------------------
        REASON FOR ERROR
           E-1) HANG UP OR LINE FAIL              E-2) BUSY
           E-3) NO ANSWER                          E-4) NO FACSIMILE CONNECTION
           E-5) MAIL SIZE OVER
```

GEORGE B. FREEHILL
WILLIAM L. JUSKA, JR.
JAMES L. ROSS*
ERIC E. LENCK
JOHN J. WALSH*
PATRICK J. BONNER*
PETER J. GUTOWSKI
MARK F. MULLER
WAYNE D. MEEHAN*
DON P. MURNANE, JR.▵
THOMAS M. RUSSO
THOMAS M. CANEVARI †
MICHAEL FERNANDEZ*
JOHN F. KARPOUSIS*▵
MICHAEL E. UNGER*†
WILLIAM J. PALLAS*
GINA M. VENEZIA*▵
BARBARA G. CARNEVALE*
DOLORES N. O'LEARY*
LAWRENCE J. KAHN*
JUSTIN T. NASTRO*
PAMELA L. SCHULTZ**
DANIEL J. FITZGERALD*†▵
JILL A. TAFT
KERRY A. DINNEEN°

*ALSO ADMITTED IN NEW JERSEY
†ALSO ADMITTED IN CONNECTICUT
▵ALSO ADMITTED IN WASHINGTON, D.C.
*ALSO ADMITTED IN LOUISIANA
°ALSO ADMITTED IN MASSACHUSETTS

LAW OFFICES OF
# Freehill Hogan & Mahar LLP
80 PINE STREET
NEW YORK, N.Y. 10005-1759
TELEPHONE (212) 425-1900
FACSIMILE (212) 425-1901
E-MAIL: reception@freehill.com
www.freehill.com

NEW JERSEY OFFICE
850 BERGEN AVENUE
JERSEY CITY, N.J. 07306
TELEPHONE: (973) 623-5514
FACSIMILE: (973) 623-3813

CONNECTICUT OFFICE
23 OLD KINGS HIGHWAY SOUTH
DARIEN, CT 06820-4538
TELEPHONE: (203) 921-1913
FACSIMILE: (203) 359-8377

May 12, 2006

Our Ref: 107-06/TMR/JJW

**Via Federal Express and Facsimile: 617-748-3960**
Jonathan Mitchell, Esq.
Assistant United States Attorney
U.S. Department of Justice
District of Massachusetts
John Joseph Moakley United States Courthouse
1 Courthouse Way
Boston, Massachusetts 02210
(Tel. No: 617 748-3100)

    Re:  U. S. v. Bouchard Transportation Company, Inc.
         04-CR-10087-MBB

Dear Mr. Mitchell:

Thank you for your letter of May 4, 2006 requesting more details regarding Bouchard Transportation Company, Inc.'s (hereinafter "BTC") adoption of Captain Ireland's suggestions, and asking that BTC allow Captain Ireland to prepare an interim audit focusing on BTC's implementation of his recommendations in his First Annual Report. To answer your questions and allay your concerns, BTC submits the following:

   1.  *Status of New Measures Initiated by the Former COO at the Time of the Initial Report*

BTC recognizes Captain Ireland's concerns regarding management changes and how they could affect the administrative processes put into place by former Chief Operating Officer Stanley Chelluck. However, BTC believes that by examining available

NYDOCS1/260874.2